# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARSHELLE C.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 22 C 2444** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **MICHELLE A. KING,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>[3]

Before the Court is Plaintiff Marshelle C.'s motion in support of summary

judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision

denying her applications for disability benefits (Dkt. 11: Pl. Mem. in Support of Summ.

J., "Pl. Mem.") and Defendant's motion and brief in support of summary judgment

(Dkt. 12: Def. Mot. for Summ. J.; Dkt. 13: Def. Mem. in Support of Summ. J.: "Resp.").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Michelle A. King for her predecessor, Carolyn Colvin, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 17, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

I.        **Procedural History**

Plaintiff applied for disability insurance benefits ("DIB") on January 21, 2020 and for supplemental security income ("SSI") on January 23, 2020, alleging disability for both claims beginning May 1, 2017. (R. 247-54.) Her date last insured was December 31, 2022 (R. 18.) The ALJ held a hearing on August 3, 2021, at which Plaintiff (who was represented by counsel), Plaintiff's friend, and a vocational expert testified. (R. 16.) On September 3, 2021, the ALJ issued a decision finding Plaintiff not disabled, and she subsequently appealed.[4]  After considering the parties' briefs and evidence, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion.

II.    **ALJ Decision**

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. 18.) At Step Two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, osteoarthritis, and chronic regional pain syndrome (CRPS) in the lower right extremity. (R. 19.) She determined that Plaintiff's hypertension, GERD, pre-diabetes, hyperlipidemia, asthma, and muscle

---

[4] The Appeals Council subsequently denied review of the second opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

strain of the right thigh were nonsevere and that her symptoms did not significantly limit her mental or physical ability to perform work-related activities. (*Id.*) Moreover, the ALJ determined that Plaintiff's obesity did not support more than minimal limitations on her ability to work because there were "no significant objective medical findings in the record." (R. 19.)

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 21.) Before Step Four, the ALJ determined that Plaintiff had a residual functional capacity for sedentary work except she can "occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to temperature extremes and dampness; can occasionally use the right lower extremity for foot controls; and on some days, may need a cane for ambulation." (R. 22)

At Step Four the ALJ found Plaintiff was unable to perform her previous work but found at Step Five that there were significant jobs in the national economy Plaintiff could perform. (R. 28.) Therefore, the ALJ held that Plaintiff was not disabled. (R. 29.)

## III.    Legal Standard

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning

4

underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The

district court's review of the ALJ's opinion "will not reweigh the evidence, resolve

debatable evidentiary conflicts, determine credibility, or substitute its judgment for the

ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal

quotations omitted).

## IV.    Analysis

Plaintiff makes three arguments for remand: (1) The ALJ's subjective symptom

evaluation was patently wrong; (2) The ALJ erred in finding her treating doctor's

opinion not persuasive; and (3) The ALJ did not support her residual functional

capacity evaluation with substantial evidence; (Pl. Mem. at 2.) For the reasons that

follow, the Court concludes that the ALJ did not err and Plaintiff's motion must be

denied.

### A.    The ALJ's Subjective Symptom Analysis was not Patently Wrong.

Plaintiff argues that in evaluating the severity of her subjective symptoms, the

ALJ (1) failed to properly assess her activities of daily living; (2) failed to acknowledge

that Plaintiff still experienced symptoms even when reporting improvement; (3)

mischaracterized medical evidence; and (4) wrongly discounted her friend's testimony.

(Pl. Mem. 12-14.) After considering the ALJ's opinion and Plaintiff's arguments, the

Court concludes that the ALJ's subjective symptom evaluation was supported by

substantial evidence.

As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). *See also, Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility determination despite disagreeing with some underlying reasons for that decision).

When evaluating Plaintiff's subjective symptoms based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p, the ALJ first acknowledged Plaintiff's allegations as set forth in her application for benefits, function report, and hearing testimony. (R. 23.) She noted that Plaintiff alleged disability due to arthritis in her lower back with degenerating disc, nerve pain, and inflammation and that these impairments affected her ability to lift, squat, bend, reach, stand, walk, sit, kneel, talk, climb stairs, see, complete tasks, concentrate, understand, and get along with others. (*Id.*) The ALJ also noted Plaintiff's complaints of pain when walking and at other times, that she alleged she could not lift more than 10 pounds, and that she had muscle spasms in her right foot. (*Id.*) As the ALJ further recognized, Plaintiff testified that she sleeps poorly due to back pain, was unable to sit on hard surfaces, and estimated she could sit and stand for ten minutes and not walk even one block. (R. 23.) Finally, the ALJ also acknowledged the testimony of Plaintiff's friend that she helps Plaintiff with

household chores, that Plaintiff cannot sit or stand for long and that she had witnessed the Plaintiff fall. (*Id.*)

After acknowledging these subjective symptoms, the ALJ provided a lengthy review of the evidence on which she based her finding that Plaintiff's pain and limitations were not as severe as she alleged. (R. 23-25.) Specifically, the ALJ discussed:

- The function report Plaintiff completed, which indicated she could drive, shop in stores, prepare meals, and do light housework; (R. 23)

- Treatment records indicating that Plaintiff's back and foot symptoms improved and her pain decreased with physical therapy and medication; (R. 24-25)

- Examination notes that consistently show normal strength, tone and movement in all extremities, despite some tenderness; (*Id.*)

- An August 2020 consultative examination that showed she could walk more than 50 feet without support without the use of an assistive device, albeit with a slightly antalgic gait; (R. 24)

- That despite Plaintiff's complaints of constant pain, record show that Plaintiff did not exhibit acute distress at medical appointments; (R. 24) and,

- Plaintiff's ability to ambulate normally during examinations. (R. 24-25.)

Balanced against this evidence suggesting less severe symptoms than Plaintiff claimed, the ALJ also acknowledged evidence supporting Plaintiff's allegations. This included Plaintiff's reports of pain in her lower back, buttock, thigh and calf (R. 24), various examination notes that reflected some tenderness in Plaintiff's right foot and back (R. 23-25), occasional reduced range of motion in her foot (R. 24), occasional mildly reduced range of motion in her lumbar spine (R. 25), an emergency room visit

for low back pain (*Id.*), an MRI showing degenerative disc disease in her lower back (R. 24), and another medical examination that revealed right foot pain, swelling and decreased sensation. (R. 24-25.) Based on this review of the records, the ALJ concluded that the evidence did not support Plaintiff's description of her allegedly severe standing, walking, and sitting limitations. (*Id.*)

In the face of such thorough weighing of the medical record, the Court finds that the ALJ's subjective symptom evaluation is supported by substantial evidence and not patently wrong. As is well-established, ALJs are subject to only minimal articulation requirements, and even less than complete subjective symptoms analyses will not be overturned if supported by substantial evidence. *Kelly v. Colvin*, No. 24-1587, 2025 WL 25959 at *5 (7th Cir., January 3, 2025). Plaintiff's arguments to the contrary, which amount to little more than a request that Court reweigh the evidence, are not well taken.

Specifically, and contrary to Plaintiff's claims, the ALJ did not equate Plaintiff's stated ability to engage in some activities of daily living with an ability to work full-time. Instead, and is proper, the ALJ commented on Plaintiff's activities as one piece of evidence weighing against her allegations of disabling symptoms. *See* 20 C.F.R. § 404.1529(a), (c)(3), *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020).

The ALJ also did not ignore or mischaracterize evidence of Plaintiff's impairments. Plaintiff contends that the ALJ wrongly considered her improvement

8

with physical therapy and medication because Plaintiff nonetheless continued to report significant symptoms. (Pl. Mem. at 13.) But the ALJ acknowledged Plaintiff's complaints of pain and her abnormal examination results alongside those that suggested less severe symptoms.

Similarly, the ALJ fully discussed the testimony of Plaintiff's friend Sharonda S. and her observations of Plaintiff's symptoms before explaining that the testimony did not establish Plaintiff was disabled. (R. 27.) The ALJ explained that she discounted the third-party testimony because Sharonda was "not medically trained to make exact observations as to dates, frequencies, types and degrees of medical signs and symptoms." (R. 27.) Moreover, the ALJ further noted that Sharonda's statements, like Plaintiff's allegations, were not fully consistent with the objective medical evidence as a whole. Her relationship with Plaintiff made the ALJ unable to consider her a disinterested party. (R. 27.) The Court concludes this explanation is sufficient. Importantly, the ALJ was not required to articulate how evidence from nonmedical sources was considered using the requirements in 20 C.F.R. § 404.1520c(a)-(c). *See* 20 C.F.R. § 404.1520c(d)

Accordingly, Plaintiff's challenge to the ALJ's subjective symptom analysis amounts to a disagreement with how the ALJ weighed the evidence. This is not a ground for remand. *Bakke v. Kijakazi,* 62 F.4th 1061, 1070, (7th Cir. 2023) ("Where ALJ

clearly notes all the evidence-that which supports his conclusion and that which undermines it-we cannot replace his judgment with ours.")

## B.     The ALJ Supported with Substantial Evidence her Determination that Plaintiff's Treating Doctor's Opinion was Not Persuasive.

In her opinion, the ALJ found Plaintiff's treating physician, Kinsley Jin, M.D.,'s February 2021 opinion unpersuasive. Specifically, the ALJ found unpersuasive Dr. Jin's views that (1) Plaintiff could not walk even one block; (2) Plaintiff could sit and stand for 10-15 minutes at one time and sit, stand, or walk for less than two hours total in an eight-hour workday; (3) Plaintiff could never lift any weight; (4) Plaintiff could not tolerate even low stress jobs; and (5) Plaintiff would miss more than four days of work per month because of her impairments. (R. 683-85.)

In making this determination, the ALJ first noted that the opinion consisted of a "checkbox questionnaire." (R. 26.) She then found the opinion not persuasive because it was inconsistent with objective medical evidence including Dr. Jin's own examination notes. (*Id.*) Specifically, the ALJ pointed to examination findings that Plaintiff improved with medication and physical therapy despite still having tenderness and reduced range of motion. (*Id.*) The ALJ further explained that the opinion that Plaintiff could lift no weight was inconsistent with Plaintiff's own self reports that she could lift 10 pounds. (*Id.*) And finally, while the ALJ acknowledged records showing that Plaintiff had back pain, she found no support for Dr. Jin's opinion that Plaintiff could not sit for prolonged periods. (R. 27.)

Under the applicable regulations, the ALJ must articulate how persuasive she finds all medical opinions in the case, considering the following factors: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors." 20 C.F.R. §§ 404.1520c(b)(2), (c)(1)–(5). Generally, however, an ALJ is required to explain in detail her assessment of just two most important factors: supportability and consistency. *Id.* § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," whereas "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. §§ 404.1520c(b)(1), (2)). In this case, the Court finds that the ALJ's consideration of these factors is supported by substantial evidence.

### 1. *Consistency*

First, Plaintiff does not dispute the ALJ's finding that Dr. Jin's opinion that Plaintiff was not able to lift any weight was squarely at odds with Plaintiff's own testimony that she could lift 10 pounds. (R. 26.)

With respect to Plaintiff's specific assignments of error, she first argues the ALJ selectively cited to evidence inconsistent with Dr. Jin's opinion and omitted evidence of consistency. Specifically, she claims that the evidence of symptom improvement the ALJ noted in two treatment notes ignored the fact that these same treatment notes also

contained negative examination findings. (Pl. Mem. at 3.) Plaintiff thus accuses the ALJ of cherry-picking facts and ignoring other information in them that reflects that Plaintiff's "improvement was not linear and that her symptoms varied." (*Id.*)

It is well-settled law that an ALJ cannot cherry pick which evidence to evaluate. *Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, she must build a logical bridge from the evidence to her conclusion. *Warnell,* 97 F. 4th at 1054; *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). After reviewing the ALJ's consideration of the evidence in these two treatment notes, the Court concludes that she did not impermissibly cherry pick.

The first treatment note the ALJ cites, from Plaintiff's December 13, 2020 appointment with Dr. Jin, reflects that Plaintiff reported symptom improvement and also states that "pain is improved." (R. 719-720.) Plaintiff points out that this same treatment note also reflects increased foot and leg spasms over the past week, complaints of intermittent back and buttocks pain, reduced range of motion in her right foot, skin discoloration and pain on palpitation, and tenderness in her spine. (*Id.*) The second treatment note is from April 16, 2021. Plaintiff describes this note as reflecting that Plaintiff "reported improvement in her right foot pain with Clonidine, [but] she also described pain that 'just [came] out of nowhere' and '[v]ery painful' spasms." (Pl. Mem. at 3.)

12

But as the Court explained above, the ALJ addressed and weighed much of the evidence Plaintiff cites, albeit not all in the section related to Dr. Jin. *See, Zellweger v. Saul*, 984 F.3d 1251, 1254-55, (7th Cir. 2021) (ALJ's opinion is to be read holistically.) The ALJ was not obligated to discuss every piece of evidence in support of her opinion. Plaintiff makes no showing that the ALJ ignored or overlooked an entire line of evidence. The Court concludes that substantial evidence supports the ALJ's finding that Dr. Jin's examination notes were inconsistent with his opinion. *See, Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes.")

That Plaintiff believes the ALJ should have ascribed a different weight to the evidence does not demonstrate error. *See Denton v. Astrue*, 596 F.3d 419, 425–26 (7th Cir. 2010) (concluding that substantial evidence supported the ALJ's analysis where the ALJ "specifically addressed all the evidence that [the claimant] point[ed] out" but declined to "assign the significance to it that [the claimant] prefer[red]"). *See also, Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("And the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence").

Next, Plaintiff argues that the ALJ failed to properly explain how evidence of Plaintiff's improvement undermined Dr. Jin's opinion. (Pl. Mem. at 3.) But it is not improper for an ALJ to consider Plaintiff's improvement with medication and therapy

to be inconsistent with a treating doctor's opinion. *See, e.g., Saman A. v. O'Malley*, No. 22-CV-7320, 2024 WL 4226271, at *3 (N.D. Ill. Sept. 18, 2024); *Nadira F. v. Kijakazi*, No. 21-CV-4464, 2022 WL 17534068, at *5 (N.D. Ill. Dec. 8, 2022); (finding that the ALJ properly considered symptom improvement as inconsistent with medical opinions of disabling symptoms.)

Plaintiff asserts that the ALJ equated her improvement with an ability to work. (Pl. Mem. at 3-4.) To the contrary, the ALJ considered evidence of Plaintiff's physical improvement and reduction (but not elimination) in pain with the use of medication and physical therapy as one piece of evidence weighing against the persuasiveness of Dr. Jin's opinion. *See, Prill v. Kijakazi*, 23 F.4th 738, 749–50 (7th Cir. 2022) (substantial evidence supported ALJ's finding that pain medication allowed plaintiff to work).

Finally, Plaintiff contends that the ALJ made an impermissible medical conclusion that Plaintiff could work despite Dr. Jin's opinion that she could not. (Pl Mem. at 4.) But it is the province of the ALJ, and not a treating doctor, to make the ultimate determination about whether a claimant is able to work, and at what residual functional capacity. 20 C.F.R. § 404.1545(a); *Cooley v. Berryhill*, 738 F. App'x 877, 880 (7th Cir. 2018) (ALJ properly rejected doctor's conclusory statement that claimant could not work.) The ALJ supported with substantial evidence her determination that Dr. Jin's opinion was not consistent with the medical evidence and the Court will not overturn that conclusion.

1.  *Supportability*

Plaintiff makes two arguments concerning supportability. First, she argues that the ALJ incorrectly determined that there was no support for Dr. Jin's opinion that Plaintiff could not sit for prolonged periods, and second, she argues that the ALJ failed to evaluate evidence that supported other parts of Dr. Jin's opinion. (Pl. Mem. at 5.) Both arguments fail.

In arguing that the record contained support for Dr. Jin's conclusion that Plaintiff could not sit for prolonged periods, Plaintiff cites her subjective complaints of low back pain, examination findings of lumbar tenderness, and an MRI that revealed degenerative disc disease. (R. 25-26.) Plaintiff also offers a general medical definition of degenerative disc disease and its acknowledgment that the condition can be characterized by pain that is worse when sitting. (Pl. Mem. at 4.)

The ALJ reasonably explained why she did not find completely persuasive the evidence Plaintiff cites as support for Dr. Jin's sitting limitation. As explained above, the ALJ's analysis of Plaintiff's subjective symptoms (which included her low back pain) was not patently wrong. Moreover, the ALJ specifically addressed Plaintiff's complaints of lumbar pain and her MRI result and noted that this condition had been managed with pain medication and physical therapy. (R. 26.)

Dr. Jin's checkbox opinion offers no supporting explanation for his extreme sitting limitation. *See, Winkelman v. Saul*, 835 F. App'x 889, 892 (7th Cir. 2021) ("Check-

box forms, unexplained, are generally weak evidence"). In fact, he appears to have rendered his opinion based only with respect to Plaintiff's CRPS in her right foot, as that is the only diagnosis he lists on the form. (R. 683.) Although Dr. Jin notes that Plaintiff's foot pain also affects her calf, thigh, glutes, and lower back, he states that the pain is "predominantly in R ankle, foot (metatarsal)." (*Id.*) It was not error for the ALJ to conclude that Dr. Jin's opinion that Plaintiff could not sit for prolonged periods was unsupported.

As for Plaintiff's diagnosis of the degenerative disc disease, general diagnoses do not support specific functional limitations. *See Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("[Plaintiff] having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work . . . . It was [Plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). The ALJ was not required to conclude that Plaintiff's degenerative disc disease diagnosis alone provided conclusive support for Dr. Jin's opinion that she could not sit.

Plaintiff's remaining arguments about the ALJ's consideration of Dr. Jin's opinion are similarly without merit. Plaintiff argues that Dr. Jin supported his opinion with his own objective evidence, but much of what Plaintiff cites is language on the checkbox opinion form. (*Id.*) These observations, unsupported by citation to any medical findings, are weak objective evidence at most. Plaintiff's other citations to Dr.

Jin's treatment records as well as her separate contention that the ALJ failed to address supposedly consistent evidence from other sources are also without merit. (Pl. Mem. at 6.) Most of the evidence Plaintiff cites as proof of supportability is again Plaintiff's laundry list of symptoms and examination findings, primarily from the August 2020 consultative examination and various physical therapy assessments. (Pl. Mem. at 7.)  As explained above, the ALJ addressed this evidence, which also reflects symptom improvement, and the Court will not reweigh her determinations

Whether reasonable minds could differ as to whether Plaintiff is disabled is not a basis for remand. *Tutwiler*, 87 F.4th at 859 (7th Cir. 2023) ("Reasonable minds could disagree with the ALJ's appraisal of this conflicting evidence. Yet judicial review is not designed for appellate judges looking at a transcript to re-weigh conflicting evidence."). In short, in finding Dr. Jin's opinion not persuasive, the ALJ adequately considered its consistency and supportability and pointed to substantial evidence in the record for her determination.

### C.    The ALJ Supported Her Residual Functional Capacity Determination with Substantial Evidence.

Finally, Plaintiff argues that the ALJ failed to support her residual functional capacity determination with substantial evidence. She contends the ALJ erred by (1) summarizing evidence; (2) making medical assessments on her own; (3) failing to properly assess Plaintiff's allegations of pain; and (4) failing to properly address

Plaintiff's obesity. While many of Plaintiff's points repeat the same attacks on the ALJ's weighing of the evidence described above, the Court will address a few in more detail.

First, Plaintiff's contention that the ALJ impermissibly summarized and did not properly analyze the evidence in support of the residual functional capacity determination is not well taken. "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Here the ALJ described the objective medical findings (both those that supported Plaintiff and that did not), took particular note of Plaintiff's improvements after conservative treatment, explained her reasons for not accepting all of the plaintiff's subjective symptoms, and evaluated all of the medical opinions before constructing the residual functional capacity. She more than "minimally articulated" her reasoning.

Next, Plaintiff contends that after rejecting all of the opinions in the record, the ALJ faced an evidentiary deficit. She argues that this led the ALJ to impermissibly assess medical evidence on her own to construct a "middle ground" residual functional capacity. (Pl. Mem. at 8-9.) The Court disagrees.

As an initial matter, the ALJ did not face an "evidentiary deficit." Instead, the ALJ considered, weighed, and partially adopted the opinions of the two state agency medical consultants as well as the consultative examiner. (R. 26-27.) With respect to the state agency non-examining doctors, the ALJ explained that she found their opinions

18

(which limited Plaintiff to a reduced range of light work) partially persuasive. Instead of accepting the opinions outright, the ALJ further considered Plaintiff's ongoing complaints of right leg pain and occasional cane usage and thus reduced the residual functional capacity to the sedentary level. (R. 26.)

Similarly, the ALJ also found the report and opinion of the consultative examining doctor somewhat persuasive. After examining Plaintiff in August 2020, William Lopez, M.D., indicated that Plaintiff was able to walk, sit, and stand, could climb up to four stairs at a time, and could lift, carry, push, and pull objects up to ten pounds. (R. 642-48.) The ALJ noted that the report was consistent with the record and specifically the doctor's own examination notes showing Plaintiff's ability to walk without a cane (with only minor gait difficulties) despite some tenderness in Plaintiff's lower spine. (R. 27.) The ALJ further explained that she found this opinion's conclusion that Plaintiff could walk, sit, and stand "vague," and so she did not consider it in constructing the residual functional capacity. (*Id.*)

Contrary to Plaintiff's claim, the ALJ did not reject these opinions outright. There was no error in the ALJ's adoption of parts of the opinions and determination that Plaintiff's complaints of leg pain and cane usage warranted a more restrictive sedentary residual functional capacity. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence.") Plaintiff's

argument that the ALJ thus impermissibly interpreted medical evidence is not well taken.

In her Reply, Plaintiff separately contends that even a sedentary residual functional capacity is not supported because the ALJ "did not identify any evidence in the record at all to reflect that [Plaintiff] could sit for extended periods of time." (Dkt. 16: Pl Reply, at 8.) This is an incorrect statement of the law; it is the Plaintiff's burden to identify evidence supporting functional limitations. *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022.)

Here, Plaintiff failed to meet that burden. As discussed above, the ALJ reasonably determined that the evidence did not support a limitation on Plaintiff's ability to sit because Dr. Jin's opinion on the issue was unsupported. Only Plaintiff's subjective complaints about pain upon prolonged sitting remained, and the ALJ's subjective symptoms analysis was not patently wrong.

The ALJ's subjective symptom analysis also supports her consideration of Plaintiff's pain in general. Plaintiff argues that the ALJ "should have evaluated whether [Plaintiff's] reports of fatigue and pain were consistent or inconsistent with the record pursuant to [SSA regulations]. (Pl. Mem at 11.) But the ALJ did just that, considering all of Plaintiff's allegations of pain, the fact that pain interfered with her sleep, and explicitly factoring Plaintiff's pain into her decision to give her a sedentary residual

functional capacity. (R. 23, 26.) Plaintiff's disagreement with the way the ALJ evaluated her symptoms is not a basis for remand.

Finally, Plaintiff argues that the ALJ failed to properly to consider the effects of her obesity in combination with her CRPS and degenerative disc disease when crafting the residual functional capacity determination. (Pl. Mem. at 12.) But the ALJ correctly explained that the record contained no significant objective findings related to Plaintiff's obesity, and the impairment did not cause any work-related limitations. For these reasons, the ALJ considered Plaintiff's obesity but determined that it did not warrant additional attention in the residual functional capacity. *See Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (no error in assessing obesity where the ALJ acknowledged the condition and "medical records do not show that [the plaintiff] suffers from any obesity-induced limitations.")

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for summary judgment (Dkt. 11), and grants Defendant's motion. (Dkt. 12.)

**SO ORDERED.**

**ENTER:**

_Laura K. McNally_

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: January 31, 2025**